```
               UNITED STATES DISTRICT COURT
                 DISTRICT OF CONNECTICUT
                                   :
GARNET ANALYTICS, INC.             :
                                   :
                                   :
                                   :
v.                                 :   CIV. NO. 3:12CV716 (WWE)
                                   :
DIVERSIFIED SOLUTIONS, INC.,       :
MICHAEL LUNDY, and BRIAN SOL       :
                                   :
                                   :
```

### RULING ON PLAINTIFF'S APPLICATION FOR PREJUDGMENT REMEDY

Plaintiff, Garnet Analytics, Inc., ("Garnet"), brings this action to recover payment and damages for breach of contract.[1] [Doc. #1; Doc. #27 at 1]. Defendants are Diversified Solutions, Inc., ("DSI"); Michael Lundy, President of DSI, and Brian Sol, Vice President of DSI (collectively "defendants").

Beginning in 2008, Garnet and its predecessor, Kaskie Plude and Company, LLC ("Kaskie Plude"), provided analytical services to DSI including preparation of tax studies and Internal Revenue Service tax returns for DSI clients in support of the clients' telephone excise tax refund ("TETR") claims, and DSI agreed to compensate Garnet for doing so. Defendant instructed plaintiff to stop work on DSI projects on April 3, 2012. Plaintiff filed

---

[1] By complaint dated May 14, 2012, plaintiff alleges breach of contract (against DSI), breach of the implied covenant of good faith and fair dealing (against DSI), promissory estoppel (against DSI), quantum meruit (against DSI), negligent misrepresentation (against DSI), fraud (against all defendants), and violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §42-110a to 110q (against DSI). [Doc. #1].

this action on May 14, 2012, to recover payment for services rendered in addition to punitive damages and attorneys' fees.

Plaintiff seeks a prejudgment remedy ("PJR") against defendants in the amount of $1,932,068.65. [Doc. #27]. This amount represents actual damages of $1,095,452.77 for completed pending TETR applications, and $507,137.50 for TETR applications not fully completed or submitted at the time DSI terminated the parties' relationship. [Pl. Ex Q and S]. Plaintiff also seeks a prejudgment award of punitive damages and attorneys' fees calculated at twenty-five percent of actual damages [Doc. #28 at 26-7]. A hearing was held on January 30, and March 11, 12, and 13, 2013.

In support of its application, plaintiff filed the Affidavits of Denise Plude, President of Garnet, and Michael Plude, CPA and principal of Kaskie Plude. At the hearing, plaintiff presented the testimony of Michael Plude and Denise Plude, along with exhibits. Defendants cross-examined plaintiff's witnesses and provided not-yet-completed testimony from Gary Kondler, an employee of Kondler and Associates, and Michael Lundy, President of DSI, along with exhibits.

**PROBABLE CAUSE STANDARD**

To grant a prejudgment remedy ("PJR") of attachment, the court must make a finding of "probable cause." Connecticut General Statutes § 52-278c(a)(2) requires that the application include:

2

> An affidavit sworn to by the plaintiff or any competent affiant setting forth a statement of facts sufficient to show that there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any known defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff.

Connecticut General Statute §52-278d provides that a PJR hearing is limited to a determination of "whether or not there is probable cause that a judgment in the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff."

"Probable cause," in the context of a prejudgment remedy, has been defined by Connecticut courts as "a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." Three S. Dev. Co. v. Santore, 193 Conn. 174, 175 (1984) (quotation marks and citation omitted).

In other words, in addressing PJR applications, the "trial court's function is to determine whether there is probable cause to believe that a judgment will be rendered in favor of the plaintiff in a trial on the merits." Calfee v. Usman, 224 Conn. 29, 36-37 (1992) (citation omitted).  A probable cause hearing for the issuance of a prejudgment remedy "is not contemplated to be a full scale trial on the merits of the plaintiff's claim." Id. at 37.  The plaintiff need only establish that "there is probable cause to sustain the validity of the claim." Id.

3

Probable cause "is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false." New England Land Co. v. DeMarkey, 213 Conn. 612, 620 (1990) (citation omitted).

After a hearing, the Court considers "not only the validity of the plaintiff's claim but also the amount that is being sought." Calfee, 224 Conn. at 38. The Court will make a determination of how much of the defendant's property may properly be attached in order to safeguard the collectibility of a potential future judgment in favor of the plaintiff." Calfee, 224 Conn. at 39. "[D]amages need not be established with precision but only on the basis of evidence yielding a fair and reasonable estimate." Burkert v. Petrol Plus of Naugatuck, Inc., 5 Conn. App. 296, 301 (1985) (citation omitted).

"[T]he Court must evaluate not only the plaintiff's claim but also any defenses raised by the defendant." Haxhi v. Moss, 25 Conn. App. 16, 20 (1991) (citation omitted).

**FINDINGS**

After four days of hearings and for the reasons set out below, the Court **GRANTS** the application for prejudgment remedy in the amount of $1,602,690.27. [Doc. #27]. This Order is subject to reconsideration if defendants provide to plaintiff's counsel the discovery requested and necessary for adequate cross examination of witnesses the defendants propose to offer to establish their claimed defenses, counterclaims and setoffs.

Through the testimony of Michael Plude and Denise Plude, plaintiff Garnet Analytics Inc. established probable cause to believe the plaintiff will prevail, at the very least, on their breach of contract claim, set out in Count One of the complaint. The court credits the testimony of both Michael Plude and Denise Plude, which was corroborated by extensive documentation and not challenged in any significant respect on cross-examination. Plaintiff tendered Denise Plude for cross-examination at the conclusion of the second of four scheduled hearing days. Defendants, after being told they could not divide the cross-examination of Ms. Plude between two defense lawyers, spent an entire court day on that cross-examination. While the cross-examination focused on the email and telephone relationship between the parties, a considerable amount of time was spent on what appeared to be diversions or general attacks on the witness' character or credibility, notwithstanding a warning from the bench that the witness had given detailed evidence about the time spent working on specific projects for defendants, and that the Court had yet to hear anything about the defendants' defenses, set-offs or counterclaims. Counsel made it clear through argument that defendants' position was that the Court should not accept any of the evidence of time spent because it was not contemporaneously recorded. None of the specific time entries was discussed or challenged on cross-examination.

At the start of the fourth (final) scheduled day, counsel for defendants said that they would not further cross-examine

Ms. Plude and expressed concern about whether they could present their defense witnesses in the remaining scheduled day. Plaintiff's counsel, after re-asserting his position that the defendants had failed to produce promised discovery or an adequate disclosure for defendant's proposed expert witness, suggested proceeding with defendants' witnesses.

Defendants chose to begin their case with their proposed expert. After hearing preliminary testimony about the witness' qualifications and experience, the Court ruled that he was not qualified to render the proposed opinion, which was described in the defendants' limited disclosure as, "the preparation of a TETR claim does not involve more than fifty (50) man hours under any circumstances."  After that ruling, defendants were warned again from the bench that the court had not yet heard any evidence concerning defenses, set-offs and counterclaims, and left to counsel the determination of how to present the remaining witnesses. With the agreement of counsel, instead of taking a morning recess, the court adjourned early for a lunch break (at about 12:40 p.m.) and reconvened at 1:30 p.m.

Defendants elected to continue by presenting the proposed expert as a fact witness. He testified on direct until after 4 p.m., when defense counsel represented that they would not finish his direct testimony that day, and asked that the hearing be continued. Plaintiff's counsel had already reiterated through repeated objections to the testimony that he would be unable to cross-examine the witness effectively because none of the

6

information or documents on which the witness relied had been produced in discovery.

At that point, the Court found that, due to the prejudice to the plaintiff from the defendants' failure to provide discovery or an adequate disclosure concerning the proposed expert witness,[1] the appropriate sanction was to rule on the application for prejudgment remedy based on the evidence presented to that time, subject to reconsideration after defendants complied with their discovery obligations and presented any additional witnesses.

Defendants then asked to suspend the Kondler testimony and call another witness; in response to their request, the Court proposed to sit until 6 p.m. Michael Lundy testified until approximately 5:15 p.m. on direct, and then for another approximately 30 minutes on cross-examination, but plaintiff's counsel was not close to finishing cross-examination and represented that his cross-examination was hampered by the absence of requested discovery materials.

Counsel for each of the parties then offered argument based on the existing record and the Court indicated it would render a written ruling the following day.

---

[1] On the current record before the Court and amply demonstrated during the four day PJR hearing, Garnet has established that it is prejudiced by defendants' litigation strategy and failure to provide timely discovery responses. Plaintiff filed this action on May 14, 2012, and the PJR Application on July 2, 2012. By mid-September, plaintiff provided its initial disclosure which included every hardcopy and electronic document in its possession. Defendant was invited to inspect Garnet's and Kaskie Plude's documents in Monroe, Connecticut, which defendants to date have failed to do.

On March 4, 2013, plaintiff moved for, among other things, an order of discovery sanctions, "precluding defendants from introducing or relying on any evidence or documentation not provided in response to [Garnet's] discovery requests, and from introducing or relying on any expert testimony from certain purported experts not adequately disclosed by defendants, or, in the alternative, for an order directing defendants to cure the defects in their discovery responses and experts disclosures by a date certain." [Doc. #96].  The history of defendants' failure to produce timely and/or meaningful responses to plaintiff's discovery requests is set forth in the Affidavit of Counsel attached to plaintiff's motion. [Doc. #28]. Defendants have yet to respond to the sanctions motion, and the Court does not think it fair to permanently preclude any evidence of their defenses, set-offs and counterclaims. However, to avoid the demonstrated prejudice to plaintiff which would be caused by adjourning these proceedings pending defendants' discovery compliance, the most appropriate sanction for defendants' failure to provide timely discovery is to condition any further PJR proceeding on the defendants' production of responsive discovery that will enable plaintiff to cross examine defendants' witnesses and respond to their defenses, counterclaims and set-offs at a continued hearing, and to rule now on the existing record subject to reconsideration.

Before any further hearing, defendants will be required to provide copies of their pre-numbered exhibits to plaintiff with two copies to the Court, fourteen days in advance of the

scheduled hearing date. Witness and exhibit lists must accompany the submission. Failure to comply may result in the cancellation and rescheduling of the hearing to a later date.

The Court reserves decision on Counts 2 through 7 to give defendants an opportunity to complete their evidence.

**AMOUNT OF THE PJR ATTACHMENT**

Because defendants agreed that they owe some amount for Garnet's past services but made no counter proposal on damages, the Court considers plaintiff's showing of contract damages, having found the existence of an agreement and its breach.

"The general rule of damages in a breach of contract action is that the award should place the injured party in the same position as he would have been in had the contract been performed . . . . Damages for breach of contract are to be determined as of the time of the occurrence of the breach." Gazo v. City of Stamford, 255 Conn. 245, 264-65 (2010) (citation omitted).

The Court has carefully weighed the credibility of the witnesses and finds the testimony of Michael Plude and Denise Plude regarding the unpaid Garnet invoices credible. For the completed TETR claims, the Court awards compensation as calculated under the 20 percent cap, as set forth in plaintiff's exhibit Q. For the TETR claims in progress, the Court awards compensation calculated at an hourly rate, as set forth in plaintiff's exhibit S, as it is less than the alternative amount

proposed by Garnet based on a 20 percent cap calculation, and some evidence has been adduced to show that DSI subsequently used Garnet's work. The Court notes that on cross-examination of Denise Plude, defendants declined to question the billing on each of the seventeen clients listed on plaintiff's exhibit S and objected to the admission of plaintiff's exhibit T which contained the supporting documentation. Plaintiff's exhibits S and T are not full exhibits. The Court, however, credits the witnesses' testimony that the claimed hours were calculated using the methodology demonstrated in the more extensive exhibits N and O for Clients One and Two.

The Court declines, at this time, to award prejudgment interest or punitive damages, without prejudice to reconsideration upon a further record, including further testimony by defendants' witnesses.

| | |
|---|---|
| TETR claims filed | $1,095,452.77 |
| TETR claims in progress | $  507,137.50 |
| **TOTAL** | **$1,602,690.27** |

Based on the evidence presented, the Court finds probable cause to believe that a judgment in the amount of at least $1,602,690.27 will be rendered in favor of plaintiff in a trial on the merits. Calfee v. Usman, 224 Conn. 29, 36-37 (1992); see Conn. Gen. Stat. §52-278c(a)(2).

The Court declines to award a PJR for future attorneys' fees and costs at this time. Plaintiff may file a motion to

increase the PJR with supporting documentation on a more developed record as additional fees and costs are incurred.

**CONCLUSION**

Based on the foregoing, plaintiff's Application for a Prejudgment Remedy **[Doc. #27]** is **GRANTED** in the amount of $**1,602,690.27** against defendant DSI. Plaintiff's Motion for Disclosure of Assets as to defendants DSI, Michael Lundy and Brian Sol **[Doc. #29]** is **GRANTED**. Defendants will comply with this ruling and order within fourteen (14) days.

Plaintiff's Motion Pursuant to Fed. R. Civ. P. 37 for Failure to Respond to Discovery **[Doc. #96]** is **GRANTED** in part as set forth in the opinion. The Court **RESERVES** on the remainder of the relief requested until defendants file their brief in opposition. Defendants' response is due on March 25, 2013.

This is not a recommended ruling.[6] This is a ruling on an Application for Prejudgment Remedy which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. §636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless

---

[6]See Aetna Life Ins. Co. v. Toothsavers Dental Serv., No. 96 CV 570 (GLG), 1997 WL 102453 (D. Conn. Feb. 4, 1997) (finding referral to Magistrate Judge "for the purpose of a hearing on prejudgment remedy" was a request for a determination of the prejudgment remedy pursuant to 28 U.S.C. §636(b)(1)(A) and was not a recommended ruling effective only upon a District Court Judge's review and adoption, pursuant to 28 U.S.C. §636(b)(1)(B)).

reversed or modified by the district judge upon motion timely made.

    Dated at Bridgeport this 14th day of March 2013.

                                          _____/s/_____
                                          HOLLY B. FITZSIMMONS
                                          UNITED STATES MAGISTRATE JUDGE