```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT
                                    :
GARNET ANALYTICS, INC.              :
                                    :
                                    :
                                    :
v.                                  :  CIV. NO. 3:12CV716 (WWE)
                                    :
DIVERSIFIED SOLUTIONS, INC.,        :
MICHAEL LUNDY, and BRIAN SOL        :
                                    :
                                    :
```

**<u>RULING ON DEFENDANTS' DEFENSES TO THE PREJUDGMENT REMEDY OF CONTRACT UNENFORCEABILITY AND ILLEGALITY [DOC. #288]</u>.**

Plaintiff, Garnet Analytics, Inc., ("Garnet"), brings this action to recover payment and damages for breach of contract and six other causes of action. [Doc. #1; Doc. #27 at 1]. Defendants are Diversified Solutions, Inc., ("DSI"); Michael Lundy, President of DSI, and Brian Sol, Vice President of DSI (collectively "defendants").

Evidentiary hearings on plaintiff's Application for Prejudgment Remedy were held on January 30; March 11, 12 and 13; and September 9, 11, 12 and 27, 2013.

**<u>Pending Claims</u>**

By complaint dated May 14, 2012, plaintiff alleges breach of contract (against DSI), breach of the implied covenant of good faith and fair dealing (against DSI), promissory estoppel (against DSI), quantum meruit (against DSI), negligent misrepresentation (against DSI), fraud (against all defendants), and violation of the Connecticut Unfair Trade Practices Act

("CUTPA"), Conn. Gen. Stat. §42-110a to 110q (against DSI). [Doc. #1].

Defendants filed their First Answer and Counterclaims on June 25, 2012, asserting counterclaims against Garnet for Breach of Contract, Negligence, Fraud, Breach of Covenant of Good Faith and Fair Dealing. [Doc. #22]. On December 12, 2012, defendants filed a "Second Amended Answer and Counterclaims," reducing the counterclaims against Garnet to Breach of Contract, Negligence, and Breach of the Covenant of Good Faith and Fair Dealing. Defendants also added counterclaims against Garnet, Michael Plude and Denise Plude for Fraud and violation of the Connecticut Unfair Trade Practices Act. [Doc. #69]. On June 12, 2013, Judge Eginton granted with prejudice plaintiff's Motion to Dismiss Count Four: Fraud. [Doc. #155].

On June 13, 2013, successor counsel for defendants filed a Motion to Amend/Correct its Second Amended Answer and Counterclaims. [Doc. #156]. The Motion to Amend was withdrawn by defendants' third set of attorneys on August 26, 2013. [Doc. #256].

On October 8, 2013, defendants filed a Motion to Amend/Correct the Second Answer of December 12, 2012. [Doc. #291]. Plaintiff's responsive pleading is due December 2, 2013. [Doc. #299; #300 Ruling granting on consent motion for extension of time to file plaintiff's response]. This motion is not ripe for review and the Proposed "Amendment to Second Amended Answer" is not the operative answer or counterclaims.

**Defendants' First Motion to Dismiss**

On August 27, 2013, the Court denied defendants' Motion to Dismiss which was based on the argument that Garnet lacked standing to bring this action because Kaskie Plude & Company, LLC, not Garnet, rendered all the services to DSI that are the subject of this action. [Doc. #257].

**Defendants' Second Motion to Dismiss**

On September 27, 2013, on the eighth day of the prejudgment remedy hearing, defendant argued that the alleged agreement between Garnet and DSI was unenforceable on public policy and illegality grounds. Leave to brief the new defense was granted at the conclusion of the hearing. Defendants filed a Brief on Contract Unenforceability and Illegality on October 4, 2013. [Doc. #288]. Plaintiff filed a response on October 11, 2013. [Doc. #297]. Defendant filed a reply on October 16, 2013. The parties filed surreply briefs on October 28 and 29, 2013, [Doc. ##306, 307].

**PREJUDGMENT REMEDY**

Evidentiary hearings on plaintiff's Application for PJR were held on January 30; March 11, 12 and 13; and September 9, 11, 12 and 27, 2013. The evidence in support of the PJR application and defenses and setoffs closed on September 27, and the Court heard closing argument.

The Court indicated that, after the close of the evidence on September 27, it would not consider facts or evidence not in

the record. Nevertheless, defendants cite PJR Def. Ex. 1003 for I.D., a copy of AICPA Rule 302; Def. Ex. 1041 for I.D. Depo. Tr. Michael Plude; and Def. Ex. 1042 for I.D. Depo. Tr. Denise Plude, which are not part of the PJR record. [Doc. #288]. Appending a copy of Rule 302 as Exhibit C; the Treasury Department Circular No. 230 as Exhibit D; or excerpts of Michael Plude's and Denise Plude's deposition testimony as Ex. A, B, E, F, G, H, I, J and K to defendants' brief does not make this evidence of record for purposes of the PJR application and defendants' assertion of counterclaims, setoffs and defenses.

Accordingly, references to evidence that was not in the record at the close of the PJR hearing will not be considered.

Nor will factual assertions without citation be considered. Any unsourced evidence and/or testimony will not be considered. A party, particularly if represented by counsel, should not leave it to the Court "to scour the record on its own in search for evidence that may support that party's contention." Rodriguez v. Schneider, No. 95 Civ. 4083 (RPP), 1999 WL 459813, *1 n.3 (S.D.N.Y. June 29, 1999)1; Cusamano v. Mr. Sobek, 604 F. Supp. 2d 416, 426 (N.D.N.Y. 2009) (A district court has no duty to perform an independent review of the record to find proof of a fact.). The Court must be satisfied by citation that the evidence in the record supports the assertion. Without citation to the record, an assertion is properly treated as argument and given only the weight the record evidence supports.

**Defendants' Improper Assertion of Unpleaded Defenses**

Plaintiff first argues that defendants' affirmative defenses "should be rejected . . . because they never pleaded either public policy enforceability or the statute of frauds." [Doc. 297 at 2]. The Court agrees. Affirmative defenses that were not operative at the close of the PJR evidence on September 27 will not be considered.

Rule 8(c)(1) provides that "a party must affirmatively state any avoidance or affirmative defense," specifically including the defenses of illegality and statute of frauds that defendants now attempt to raise. There is no dispute that the affirmative defenses of illegality and statute of frauds were not pleaded in defendant's operative "Second Amended Answer and Counterclaim."  [Doc. #69].

Defendants filed a Motion to Amend/Correct Second Amended Answer of 12/12/12 on October 8, 2013.  If the motion is granted and defendants are permitted to file their Proposed Amendment to Second Amended Answer, then the parties can complete discovery and present these claims, defenses and counterclaims on a Motion for Summary Judgment on a full evidentiary record.  But the Court cannot find probable cause to sustain these affirmative defenses on the existing PJR record.

**Contract Claim**

Defendants seek dismissal of plaintiff's contract claim, arguing that the contract is unenforceable on public policy and illegality grounds. [Doc. #288 at 1]. Specifically, they argue

5

that the "contract was in violation of a CPA's duties under Treasury Regulations of the United States, [IRS Circular 230] and the ethical rules of the AICPA [Rule 302]"  Id. While the subject of IRS Circular 230 was raised in these PJR proceedings, the Court pointed out that this defense had not been pleaded. [Doc. #171, Tr. 3/12/13 at 138:15-139:5]. During the hearing, defendants argued their theory that Garnet was formed because Michael Plude "didn't want to have a contract where he was billing out at a contingency fee that was unlawful under the Circular 230 requirements of the IRS." 3/12/13 Tr. 137:4-6.  The Court noted that no evidence presented supported that theory; that Denise Plude was asked this question and responded "no," and defendants did not ask Michael Plude.  3/12/13 Tr. 138: 8-9; 137:23-25; 142:12-15.

> COURT: Is this the point of all of this, Ms. Fillmore? Are you going to claim that the contract is void because of public policy . . .is a violation of public policy?
>
> MS. FILLMORE: Your Honor, we wanted to get into it here to establish that the scope of work hadn't actually changed; it was the same. But as far as what our defenses are, we're just at a pre-trial hearing now.
> 3/12/13 Tr. 139: 9-15.
>
> . . .
>
> COURT:  So it would be very helpful to me to know. . . and I'm hoping to hear at some point, what the defenses to this are, the counterclaim and the set offs. Because if there is no evidence of those, then all I need to do is make a probable cause determination based on the plaintiff's evidence.
> 3/12/13 Tr. 139:21-140:1
>
> MS. FILLMORE: Well I think it is a defense we intend on raising. However, we've just become aware of this fact within the last week or so.

>It's just a newly discovered issue we've come
>across . . . but we intend on pursuing that
>defense, yes.
>3/12/13 Tr. 140:10-14.

Plaintiff correctly states that no evidence was presented to support defendants' public policy/illegality defense during the PJR hearings and "there is no basis for an inference that the motivation was other than as Mr. and Mrs. Plude testified: the work expanded to include preparation of supporting documentation for TETR returns." [Doc. #297 at 2, n.2]. The record evidence supports the Pludes' testimony; the Court declines to go beyond the existing PJR record.

**<u>Contingency Fee Agreement</u>**

Plaintiff correctly points out that on March 12, defense counsel seemed to say that the defense was not illegality as such; rather, defendants stated that Garnet's purported contingent fee treatment of billing left them "in a position where they can't even try to analyze what hours were done, because . . . [Garnet] didn't keep track of any of their hours." 3/12/13 Tr. at 141:25-142:6.  The following day, defense counsel disclaimed any intent to characterize the contract as a contingency fee agreement. "**<u>[I]t is certainly not the defendant's position that there was a contingent agreement</u>** . . . . [w]hat the assertion is is that it was treated that way . . . ." [Doc. #166, 3/13/13 Tr. 22:7-12 (emphasis added).  Defense counsel confirmed that the "contingent fee" argument was an

7

objection to Garnet's time accounting because the records were not created contemporaneously.

> [T]he only logical assumption that the two highest billing members of a company wouldn't keep track of their very valuable $500 per hour time is at least circumstantial evidence that they were treating it as something other than it was and not abiding by the terms as they were between the parties.
>
> And so **it's not that we somehow argue that it really was a contingent fee agreement**, that –it's only that it was treated that way. And I think that records created after the fact are not more probative than prejudicial with respect to how the records were kept at the time.

3/13/13 Tr. 22:12-22 (emphasis added). Defendants have committed themselves to this position. This is a judicial admission that binds defendants, notwithstanding the change of counsel. <u>Banks v. Yokemick</u>, 214 F. Supp. 2d 401, 405 (S.D.N.Y. 2002). "Judicial admissions obviate the need for debate, discussion or discovery regarding particular factual issues because the parties make concessions or stipulations regarding those issues that remove them from debate." <u>Id.</u> 214 F. Supp. 2d at 405. Indeed, in the parties' Rule 26(f) Report, DSI stipulated that, "GAI performed work for DSI in connection with TETR applications on behalf of DSI clients pursuant to an agreement that GAI would be paid on an hourly basis, with total fees capped at 20% of the payment to DSI from each such client." [Doc. #38 at 9]. Defendants' Second Amended Answer and Counterclaims states that, "[t]he agreement between the parties consists of a number of understandings evidenced by email communications and telephone calls. However, it was always clear that GAI agreed

8

and represented to DSI that its services were provided to DSI on an hourly fee basis." [Doc. #69 at ¶65]. Stipulations by a party or its counsel are binding upon the party making them. Banks, 214 F. Supp. 2d at 405 (citation omitted).

**Statute of Frauds Defense**

As set forth above, defendants did not plead or argue this affirmative defense by the conclusion of the PJR hearing and the pending Motion to Amend the Second Amended Answer is not ripe for decision. Defendants' conclusory statements of fact to support their statute of frauds defense, without support in the record, will not be considered at this time.

**CONCLUSION**

In raising these defenses at the conclusion of the PJR hearing, defendants ask the Court to consider and rely on evidence outside the PJR record, which the Court declines to do. If the amendment to the answer is permitted, defendants may perhaps present a factual record which would support summary judgment or entitle defendants to raise them at trial. The Court is not opining on the potential success of a possible summary judgment motion on a different record. Defendants were urged from the beginning of these prolonged proceedings to raise any defenses for the Court's consideration, and three sets of lawyers contributed to the existing record. Sufficient time and resources have been spent litigating this Application for Prejudgment Remedy. On this record, these asserted defenses to

the contract claim, belatedly raised and unsupported by the evidence, do not provide a basis for vacating or modifying the Court's prior ruling.[5]

This is not a recommended ruling.[6] This is a ruling on an Application for Prejudgment Remedy which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. §636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

Dated at Bridgeport this 7th day of November 2013.

\_\_\_\_\_/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE

---

[5] The Court will issue another ruling addressing the arguments for increasing and decreasing the amount of the PJR.

[6] See Aetna Life Ins. Co. v. Toothsavers Dental Serv., No. 96 CV 570 (GLG), 1997 WL 102453 (D. Conn. Feb. 4, 1997) (finding referral to Magistrate Judge "for the purpose of a hearing on prejudgment remedy" was a request for a determination of the prejudgment remedy pursuant to 28 U.S.C. §636(b)(1)(A) and was not a recommended ruling effective only upon a District Court Judge's review and adoption, pursuant to 28 U.S.C. §636(b)(1)(B)).